### BROOKE *et al. v.* JONES & OGLESBY *et al.*

HILL, J. Where A borrows money and secures it by deed to real estate, and subsequently sells a part of the land to B, giving him bond for title, and delivers the purchase-money notes to the holder of the security deed, which notes are in excess of the debt secured by such deed, and where B sells to C a portion of the land he has purchased and gives bond for title, and the two subsequent purchasers bring a suit against A, and others, praying certain equitable relief, and a demurrer to the petition is filed, it is error, in advance of passing on the demurrer and before the issues as made by the answer of the defendants are finally determined, to order a sale of the entire tract of land and, in such order, adjudicate certain rights of one of the parties and leave open other issues made by the pleadings for the final judgment.

*Judgment reversed. All the Justices concur.*
JULY 10, 1915.

Equitable petition. Before Judge Fite. Bartow superior court. May 30, 1914.

Jones & Oglesby and J. W. Bell filed their petition against George W. Brooke and J. P. Brooke. The case alleged may be briefly summarized as follows: George W. Brooke borrowed from the Lowry National Bank $4,000, to secure the payment of which he gave a deed to three lots of land in Bartow county. Later he sold to Bell, in two separate transactions, part of the land covered by the deed, giving Bell a bond for title thereto, receiving a part of the consideration in cash, and taking Bell's notes aggregating $4,500. It was agreed that Brooke should deposit these notes with the Lowry National Bank, so that payments made thereon by Bell should to that extent relieve the prior lien of the bank upon the property; and $4,250 of the notes were so deposited. Thereafter Bell sold to Jones & Oglesby 50 acres of the land, for a consideration of $3,500. By agreement, notes aggregating this amount were executed by Jones & Oglesby to Bell, and indorsed by him in blank, in order that George W. Brooke might deposit them with the bank as additional collateral security, unless he could exchange them for some of the notes of Bell already held by the bank. Plaintiffs have

only recently learned that these notes were not deposited with the bank by Brooke, and that one of them for $500 has been by him negotiated to Foster & Collins. Plaintiffs have demanded the return to them of the remaining $3,000 of notes, which demand said Brooke refuses, and claims he has the notes in the possession of his brother, J. P. Brooke. His only excuse is that he keeps them to protect his equity in the property, which is protected by the fact that the deed given by him to the bank is a security deed and not an absolute one. There are judgments against George W. Brooke, of record in Bartow county, amounting to over $4,000; and plaintiffs know of no property of his liable to these judgments, or to plaintiffs for any loss they may sustain. George W. Brooke has no right to the custody or control of the notes, but it was his duty to carry out the understanding upon which they were given, that is, of exchanging them for some of the notes of Bell, or else depositing them with the bank. J. P. Brooke could sell or hypothecate the notes to an innocent purchaser, and might force a liability against the plaintiffs without their securing title to the property for the purchase-price of which the notes were given. Neither of the plaintiffs should be required to pay any part of the notes until they get an unincumbered warranty title to the property, free from any liability for any judgments held by the creditors of George W. Brooke. Among other prayers, it is asked that each of the defendants be restrained from hypothecating or alienating any of the notes; and that they be returned to the plaintiffs, so they may cancel the same or strike off the indorsement of the plaintiff Bell, and strike out the negotiable words in the notes. By amendment the price agreed to be paid by Bell for the property purchased by him is stated as being $5,500, for which he gave his notes, of which notes to the amount of $4,250 were deposited with the Lowry National Bank. Twenty acres of the land included in the deed to the bank, but not included in the bonds for title given by Brooke, have been sold and conveyed by him; but the remaining twenty acres, unincumbered and not included in said bonds for title, have not been conveyed out of him. J. P. Brooke has claimed in his answer to have a transfer to him of the bond for titles given by the bank to George W. Brooke, and to have paid the latter therefor $1,000; but J. P. Brooke stated in court that this $1,000 represented a loan made by him to his brother; and the plaintiffs are

not definitely advised as to the nature or effect of the transfer. George W. Brooke in his answer has alleged that he assigned the bond for title to J. P. Brooke, before this suit was begun, for a consideration of $1,000, and that "this assignment took out of this defendant all interest then in Mr. Bell's notes, and in the land described in the said bond, except the interest he had as indorser on the papers, and as warrantor of the title," and that "this defendant insists that the date of this deed is back of any judgments against him, and this note could in no sense, in law or equity, be subject to any judgment subsequently obtained." The names of a number of judgment creditors of George W. Brooke, with the amounts of their judgments, and the dates and places of their record in the clerk's office of Bartow superior court, are set out. Parties holding $1,250 of the notes signed by Bell, other than the $4,250 of notes held by the bank, will be claiming to collect the same out of the plaintiff Bell, although he does not admit that they are innocent purchasers. "Said Lowry Bank will be contending that it has a right to collect the $4,250 worth of J. W. Bell's notes held by it; and said J. W. Bell should not be forced to pay any of said notes until he can get a perfect title to the property described in the two bonds for title held by him and signed by Geo. W. Brooke, hereinbefore referred to, free from any of aforesaid judgments, or from any danger of litigation with reference thereto." Jones & Oglesby deny the right of Foster & Collins or any one else to collect the note claimed by them for the sum of $500, given by them to Bell and indorsed by the latter and sold by George W. Brooke, or that they can be forced to pay their $3,000 of notes in the hands of J. P. Brooke until they receive a deed from plaintiff J. W. Bell; but they can not terminate their liability on the notes without the consent of the various parties, or without litigation with reference thereto. They can not determine the nature of the transaction transferring the bond for title from the bank to J. P. Brooke, or what his rights are. They are ready and willing to discharge their obligations on the notes whenever they can obtain perfect title to the property purchased by them, free from liens of the various judgments or claims of title or liens by either of the Brookes. The making of the judgment creditors parties will prevent vexatious litigation and multiplicity of suits, and all matters and things involved should be determined in one decree; wherefore they pray that the judg-

ment creditors be made parties, and that all matters involved be so determined. By a further amendment it is alleged, that J. P. Brooke has notified the plaintiffs of his intention to bring suit against them on two of the notes held by him, and that when he was restrained from selling or hypothecating the notes they did not contemplate his bringing suit thereon; and it was asked that he be enjoined from doing so. By still another amendment it is alleged, that the Lowry National Bank has obtained judgment against the land concerned and against George W. Brooke for the full amount of its claim, and is preparing to sell the land in controversy thereunder; and that Jones & Oglesby have paid the $500 note which was negotiated to Foster & Collins, and under the order of the court have paid the balance due by them on the land they purchased to J. P. Brooke, who has turned the same over to the Lowry National Bank in reduction of its debt against George W. Brooke. It is sought to obtain a decree directing a sale of the entire property, under which decree the prior lien of the bank is to be preserved and the rights of the other parties fixed prior to the sale, so that the property will bring more than if sold, while the complications in regard thereto exist, under the judgment obtained by the Lowry National Bank. It is prayed that certain described tracts be sold in a named order, and that the funds so derived be dealt with in a designated manner.

Demurrers and answers were filed by the defendants. The answers raise several issues of fact as to the matters alleged. For instance, George W. Brooke denies the allegations as to the purpose for which the notes of Jones & Oglesby were indorsed and turned over to him, and sets out a different agreement. He further avers, that the Lowry National Bank agreed to collect the Bell notes and to look to them for the payment of the balance due it; and it had exclusive control of the notes, but refused to make the collection.

Without having passed on the demurrers, and without any final determination of the issues of fact made by the pleadings, the judge passed an order directing a sale of the entire property in a specified manner, in which decree he undertook to adjudicate certain rights of the parties with respect to certain tracts of the land. To this decree the defendants excepted.

*J. P. Brooke* and *Finley & Henson,* for plaintiffs in error.
*John T. Norris,* contra.